**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, et al., | No. CV-13-01475-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Breakwater Equity Partners LLC, et al., | |
| Defendants. | |

Plaintiff 4801 East Washington Street Holdings, Inc. filed an action against Defendants Breakwater Equity Partners, LLC and Thompson National Properties, LLC ("TNP") alleging conversion, fraudulent transfer, and breach of contract arising out of Defendants' transfer of Rents[1] generated from a commercial property. The parties filed cross-motions for summary judgment, and the Court granted Plaintiff's motion on the conversion claim. Doc. 216.

In light of this ruling, the Court ordered the parties to submit a joint memorandum describing the issues remaining in the case. *Id*. at 16-17. The parties reported that several Defendants, referred to as the "Borrowers," had been dismissed from the action by Plaintiff. Doc. 217 at 2. The parties agreed that the Court had found TNP and Breakwater liable for conversion, but disagreed on whether the Court had resolved the

---

[1] Capitalized words have the same meaning as in the relevant documents and the Court's prior orders.

amount of compensatory damages. *Id*. In addition, TNP filed a motion to determine the comparative fault among it, Breakwater, and the Borrowers. Doc. 222.

The Court directed the parties to file memoranda on these issues and, after further briefing, entered an order that supplemented its summary judgment ruling and awarded Plaintiff $605,000 in compensatory damages. Doc. 230. Because the comparative fault issue had arisen only recently, the Court directed the parties to submit briefs regarding whether comparative fault or joint and several liability applied in this case. Doc. 230. In response, Plaintiff filed a motion for summary judgment (Doc. 232) and Defendants filed briefs and responses. Breakwater also filed a motion to strike Plaintiff's motion for summary judgment. Doc. 239.

The issues are fully briefed, and the Court finds that oral argument will not aid in the resolution of this matter. *See* LR Civ. 7.2(f). For the reasons stated below, the Court will grant Plaintiff's motion, deny Breakwater's motion, and terminate this case.

**I.   Motion to Strike.**

Breakwater argues that Plaintiff's motion for summary judgment is untimely, prejudicial, infringes Defendants' right to a jury trial, and constitutes improper lawyering by the Court. Doc. 239. The Court does not agree.

Rule 56(f) provides that, after giving notice and a reasonable time to respond, a court may grant summary judgment to a non-movant, grant summary judgment on a ground not raised by the parties, or consider summary judgment on its own after identifying for the parties the material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f). The Ninth Circuit has recognized the power of district courts to enter summary judgment *sua sponte*. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003). The intent of Rule 56(f) and this Ninth Circuit holding, obviously, is to permit courts to resolve issues that do not require a trial – issues that can and should be resolved on the basis of the law and undisputed facts.

Thus, although it is true that the comparative fault issue was not raised in Plaintiff's original motion for summary judgment, its was raised by TNP after the

summary judgment briefing (Doc. 222) and the Court has power to address it under Rule 56(f) if undisputed facts allow for its resolution short of trial. Rule 1 requires the Court to administer the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action. Fed. R. Civ. P. 1. Holding a jury trial on an issue that can be resolved under Rule 56 would waste the time and money of the parties, the jurors, and the Court.

The parties have had a full and fair opportunity to address the issues decided in this order. The Court's ruling is based on facts addressed in three rounds of briefing, and the parties have been afforded an opportunity to address the specific legal issues resolved here. Breakwater complains that the briefing has not filed the traditional motion, response, and reply format, but Breakwater has been given the opportunity to file a memorandum and a reply *after* the issue to be addressed was identified for all parties. Doc. 230 at 3-4. Breakwater's motion to strike will be denied.

**II.    Joint and Several Liability.**

**A.    Relevant Law.**

The Arizona Revised Statutes provide that "[t]he liability of each defendant is several only and is not joint, except that a party is responsible for the fault of another person . . . if . . . [b]oth the party and the other person were acting in concert." A.R.S. § 12-2506(D)(1). "'Acting in concert' means entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively taking part in that intentional tort." § 12-2506(F)(1). Thus, joint and several liability applies, rather than comparative fault, if the parties "(a) knowingly agreed to commit an intentional tort that (b) they were certain or substantially certain would result in the consequences complained of, and (c) actively participated in the commission of the tort." *Chappell v. Wenholz*, 247 P.3d 192, 194 (Ariz. Ct. App. 2011) (citing *Mein ex rel. Mein v. Cook*, 193 P.3d 790, 793-94 (Ariz. Ct. App. 2008)). "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Mein*, 193 P.3d at 794.

**B.    Analysis.**

Plaintiff argues that Breakwater and TNP are jointly and severally liable for the $605,000 in damages because they acted in concert to convert the funds. Plaintiff asserts that emails sent between Defendants establish that they had knowledge that the Rents were Plaintiff's property and that transferring the Rents out of the Operating Account would impair Plaintiff's control of the Rents. The Court agrees.

The Court has already concluded that, on January 11, 2013, the date on which the Loan went into default, Plaintiff was immediately entitled to all of the Rents. Doc. 216 at 4, 10. It is undisputed that Defendants were aware of this fact and discussed the impact of the default. Counsel for both Breakwater and TNP recognized that the Rents "represent proceeds of the real property *which are technically the [Plaintiff's] collateral*." Doc. 190-1 at 263, 267-68 (emphasis added). In fact, because of the potential legal consequences arising from Defendants' plan to transfer the Rents to other accounts after the default, TNP required indemnification from Breakwater and TNP's counsel recommended setting aside funds to pay for litigation likely to result from the "impending default, and the possibility [TNP] will get a notice from lender re no further use of rents[.]" *Id.* at 267. With full knowledge that the Rents were Plaintiff's property and that a lawsuit could result, TNP transferred nearly $2 million in Rents to Breakwater. Doc. 216 at 4.

These undisputed facts show that Breakwater and TNP acted in concert to convert Plaintiff's Rents within the meaning of § 12-2506(D). The emails between Defendants' counsel show that Breakwater and TNP agreed to make the transfers. Both Defendants knew that the Rents were Plaintiff's property, and both intended to exercise dominion and control over that property. TNP made the transfers to Breakwater and retained nearly $50,000 for its fee. Breakwater held the Rents in accounts over which it had control, made additional transfers to other parties, and retained over $500,000 as its fee. This conduct shows that Breakwater and TNP knowingly agreed to convert the Rents and actively participated in the commission of the tort. *See Chappell*, 247 P.3d at 194.

Breakwater and TNP argue that the Borrowers directed them to make the transfers. They claim that the Borrowers are the real parties at fault and that they were merely acting as their agents. But the Court already rejected this defense in its prior order, noting that under Arizona law a party cannot escape liability for conversion merely because he was acting as an agent for his principal. Doc. 216 at 13. And this argument ignores the undisputed fact that Breakwater and TNP knew that Plaintiff was entitled to the Rents and nonetheless exercised control over them.

Defendants also argue that they did not intend to cause any injury to Plaintiff. The tort of conversion, however, does not require such intent. "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (citing Restatement (Second) of Torts § 222A(1) (1965)). "[T]he intent required is not necessarily a matter of conscious wrongdoing," rather it is the "intent to exercise a dominion or control over the goods which is in fact inconsistent with plaintiff's rights." *Matter of 1969 Chevrolet*, 656 P.2d 646, 650 (Ariz. Ct. App. 1982). As the Court noted in its previous order after citing this authority, "TNP does not dispute that it intentionally made transfers of Rents from the Operating Account to Breakwater, and Breakwater does not dispute that it intentionally accepted such transfers and controlled the Rests in its accounts." Doc. 216 at 13. Both parties had the intent to commit the tort of conversion.

Nor does § 12-2506 require an intent to harm. It applies if Defendants committed an act "they were certain or substantially certain would result in the consequences complained of" – the conversion. *Chappell*, 247 P.3d at 194. It is undisputed that Breakwater and TNP intended to transfer the Rents out of the Operating Account and exercise dominion and control over them. Defendants were certain that this would result in the conversion of Plaintiff's funds – the intentional exercise of dominion or control over the Rents, which would seriously interfere with Plaintiff's right to control the Rents. Nothing more is needed for the tort of conversion. *Miller*, 104 P.3d at 203. What is

more, both Defendants were substantially certain that Plaintiff would exercise its legal rights to the Rents. TNP even recommended setting aside funds to defend a potential lawsuit and demanded that Breakwater indemnify it.

This is not a close question. The undisputed facts show that Breakwater and TNP acted in concert to convert Plaintiff's Rents. Under § 12-2506, Breakwater and TNP are jointly and severally liable for the $605,000 in damages awarded to Plaintiff.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 232) is **granted**.
2. Breakwater's motion to strike (Doc. 239) is **denied**.
3. The Clerk is directed to terminate this action.

Dated this 23rd day of September, 2015.

_____
David G. Campbell
United States District Judge